UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOSEPH KELLY,

                              Petitioner,

        v.

TIMOTHY FILSON, *et al.*,

                              Respondents.

Case No. 3:14-cv-00685-MMD-CBC

ORDER

## I.    SUMMARY

This *pro se* habeas petition comes before the Court for consideration on the merits (ECF No. 6). Respondents have answered (ECF No. 40), and Petitioner has replied (ECF No. 44). For the reasons discussed herein, the Court denies the petition.

## II.    RELEVANT BACKGROUND

Petitioner Joseph Kelly challenges his 2010 state court conviction, pursuant to a guilty plea, of two counts of robbery with use of a deadly weapon and one count of attempted robbery with use of a deadly weapon. (ECF No. 6 at 2, 18-19.) The charges arose after Petitioner allegedly robbed or burglarized several businesses, in many cases using an airsoft gun. (*See id.* at 8.) Petitioner was initially charged with four counts of burglary, two counts of robbery with use of a deadly weapon, and two counts of attempted robbery with use of a deadly weapon. (Exh. 2 (ECF No. 9-2).)[1]

Petitioner entered a plea of guilty to three counts—two counts of robbery with use of a deadly weapon and one count of attempted robbery with use of a deadly weapon. (Exh. 11 (ECF No. 9-11) at 3-4; Exh. 12 (ECF No. 9-12).) Pursuant to the plea agreement, the remaining five counts were dismissed. (Exh. 11 (ECF No. 9-11) at 5; Exh. 15 (ECF No. 9-15) at 27.)

---

[1]The exhibits cited in this order, constituting the relevant state court record, are located at ECF Nos. 9-13.

A presentence investigation ("PSI") report was prepared, which indicated that Petitioner had four prior felonies, including one for assault. (Exh. 13 (ECF No. 9-13).) At sentencing, Petitioner's counsel stated that he had reviewed the PSI with Petitioner and that there were no inaccuracies. (Exh. 15 (ECF No. 9-15) at 3).) Later, however, counsel advised the court that the assault conviction was not a felony, only a misdemeanor, and that Petitioner therefore had only three prior felonies. (*Id.* at 19.) The court ordered the Division of Parole and Probation to look into it and correct the PSI if the conviction was indeed not a felony. (*Id.* at 20.) The trial court eventually sentenced Petitioner to consecutive terms of 28 to 70 months on each of the charges, with consecutive terms of 12 to 30 months for the deadly weapon enhancements. (Exh. 16 (ECF No. 9-16).) In setting forth the factors underlying its determination, the court noted Petitioner's criminal history, which it described as "replete with crimes of theft." (*Id.* at 25.)

Petitioner appealed his sentence, and the Nevada Supreme Court affirmed. (Exhs. 18, 27, 32 (ECF Nos. 9-18, 10-4, 10-9).)

Petitioner filed a postconviction petition for habeas relief in state court. (Exhs. 37, 44 (ECF Nos. 10-14, 10-21).) The district court dismissed all but one claim and held an evidentiary hearing on the remaining claim—that trial counsel was ineffective for failing to investigate whether the airsoft gun was a deadly weapon. (Exhs. 52, 57 (ECF Nos. 11-6, 11-11).) The trial court ruled in Petitioner's favor on that claim, after concluding that although the airsoft gun was in fact a deadly weapon, trial counsel performed deficiently when he failed to conduct a reasonable investigation into its capabilities. (Exh. 58 (ECF No. 11-12) at 4-6.) The Nevada Supreme Court reversed, however, holding that Petitioner could not demonstrate prejudice because he had not demonstrated that, had counsel conducted further investigations, he would have opted not to plead guilty. (Exh. 77 (ECF No. 12-11).)

Petitioner thereafter filed the instant federal habeas petition.

///

///

## III.    LEGAL STANDARD

28 U.S.C. § 2254(d) provides the legal standards for this Court's consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-94 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

*Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181. The state courts' decisions on the merits are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015).

## IV.    DISCUSSION

### A.    Grounds 1 & 3

In Ground 1 of the Petition, Petitioner asserts that trial counsel was ineffective for failing to object to the inaccuracies in the PSI. (ECF No. 6 at 3.) As noted, counsel initially represented there were no inaccuracies but later corrected that statement, pointing out that the assault conviction was actually resolved as a misdemeanor. Petitioner argues that another of the listed felony convictions was also just a misdemeanor, and that counsel never objected to this inaccuracy. Petitioner asserts that counsel's failure to object and the court's failure to correct the erroneous information in his PSI has caused him prejudice in that he is being denied parole due to having four felony convictions. (*Id.* at 3-4.)

In Ground 3, Petitioner asserts appellate counsel was ineffective for failing to appeal the incorrect information in the PSI and the trial court's failure to correct the misinformation. (ECF No. 6 at 14.)

On postconviction review, the district court denied these claims, holding:

> First and foremost, Petitioner's second claim for relief, that the trial court abused its discretion in basing Petitioner's sentence on a factually inaccurate PSI, is barred because it could have been raised on direct appeal. NRS 34.810(1)(b)(2); *Evans v. State*, [28 P.3d 498, 507 (Nev. 2001)]. Accordingly, the State's *Motion to Dismiss* Claim II is **GRANTED**.

> . . .

> In Claim I, Petitioner alleges his counsel was ineffective for failing to correct an error in the PSI which indicated Petitioner had been convicted of more felonies than he actually had been. The record demonstrates Petitioner cannot establish he was prejudiced by any alleged error. First and foremost, the error was brought to the attention of the court later in the proceedings by Petitioner and his counsel. *See* Sentencing Transcript (hereinafter "S.T."), at 19. Furthermore, the court's statements indicate that it did not take any potential errors relating to Petitioner's previous convictions into account in determining Petitioner's sentence. *Id.* at 19-20. Accordingly, the State's *Motion to Dismiss* Claim I is **GRANTED**.

> Claim III alleges ineffective assistance of appellate counsel for, essentially, failure to raise Claim II on direct appeal. Again, Petitioner cannot establish prejudice because he cannot establish that any error in the PSI led to an increase in his sentence as the court made no indication at sentencing that it was taking the allegedly erroneous felony convictions into account in determining Petitioner's sentence. Indeed, the record of the sentencing proceeding evidences the contrary: the court did not increase Petitioner's sentence based on his criminal history. Accordingly, the State's *Motion to Dismiss* Claim III is **GRANTED**.

(Exh. 52 (ECF No. 11-6) at 3-4.) The Nevada Supreme Court concluded that the district court did not err in dismissing these claims. (Exh. 77 (ECF No. 12-11) at 1 n.1.) The state courts' rulings were not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

A sentence based on materially incorrect information or assumptions violates due process. *See, e.g.*, *United States v. Tucker*, 404 U.S. 443 (1972); *Townsend v. Burke*, 334 U.S. 736, 740 (1948). To establish a due process violation, the petitioner must show that the "challenged information . . . demonstrably made the basis for the sentence." *Jones v. U.S.*, 783 F.2d 1477, 1480 (9th Cir. 1986). To determine whether the challenged information demonstrably made the basis for the sentence, the Court may look at numerous factors, including "the judge's own recollection." *Farrow v. United States*, 580 F.2d 1339, 1353 (9th Cir. 1978). A sentence is not infirm "where the trial judge disavows reliance on the challenged sentencing information." *Jones*, 783 F.2d at 1481. Where a judge concludes that the sentence he imposed was not influenced based on the allegedly false information, "this 'may not normally be overridden,' since 'the judge's own estimation of the deleterious impact of the prior convictions on his determination of sentence' will not be reversed absent clearly contradictory evidence in the record." *Farrow*, 580 F.2d at 1355.

Here, the trial court stated that it did not rely on the allegedly erroneous information in fashioning Petitioner's sentence, and this statement is not contradicted by the record. While the court did consider Petitioner's prior criminal history in sentencing him, it did not rely on the fact of four prior felonies. Rather, it noted that Petitioner's criminal history was "replete with crimes of theft," without regard to whether they were felonies or misdemeanors. That Petitioner has been convicted of many crimes of theft is not in dispute. Although it is true that the second alleged inaccuracy was never raised to the trial court at the time of sentencing, the trial court indicated that it did not consider that information, and there is nothing to suggest that it did. Petitioner therefore has not

///

6

established that the allegedly false information in the PSI affected his sentence and thus has not established a due process violation.

For the same reason, Petitioner cannot establish prejudice, and therefore cannot establish ineffective assistance of counsel. Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief—deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* at 696.

Because the allegedly erroneous information did not affect Petitioner's sentence, Petitioner cannot show a reasonable likelihood of a different sentence had trial counsel objected to both items of erroneous information or had appellate counsel raised a claim regarding the erroneous information on appeal.

To the extent Petitioner asserts that the allegedly false information in the PSI has affected and is affecting his chances for parole, this alleged error is not cognizable in habeas. A district court's habeas jurisdiction is limited to challenges to the "fact or duration" of a petitioner's confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 489-98 (1973). A claim falls outside the core of habeas, and is not therefore cognizable in habeas, if it "would not necessarily lead to immediate or speedier release." *Nettles v. Grounds*, 830 F.3d 922, 934 (9th Cir. 2016). Petitioner's prior convictions are only one of many factors the Parole Board considers in deciding whether to grant parole; thus, correction of the PSI to reflect only two prior convictions would not necessarily lead to Petitioner's

speedier release. *See id.* at 935. Because success on Petitioner's claim would not affect the validity of his conviction or lead to speedier release, the Court lacks jurisdiction over the claim in this respect. *See id.*; *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003).

As the state courts were not objectively unreasonable in dismissing Petitioner's claims of ineffective assistance of counsel and due process asserted in Grounds 1 and 3 of the petition, Petitioner is not entitled to relief on either ground.

### B. Ground 2

In Ground 2, Petitioner asserts that his right to effective assistance of counsel was violated because counsel failed to investigate and challenge the deadly weapon enhancements. (ECF No. 6 at 6.) Petitioner used an airsoft gun during the commission of his crimes, but he asserts an airsoft gun is not a deadly weapon under NRS § 193.165(6). (*Id.* at 6-8.) Petitioner argues that his attorney advised him the airsoft gun was a deadly weapon without doing any independent research into that fact, that the advice to plead guilty was based on that conclusion. (*Id.* at 7.) Petitioner asserts that he would not have pleaded guilty had he known the airsoft gun was not in fact a deadly weapon. (*Id.* at 7-8.)

As noted above, the trial court found the airsoft gun was a deadly weapon but nonetheless held that counsel was ineffective for failing to independently research its status before advising Petitioner to enter a guilty plea. In reversing the trial court, the Nevada Supreme Court held:

> The district court conducted an evidentiary hearing and Kelly presented no evidence regarding the gun's capabilities; however, the State presented expert testimony that the gun was capable of expelling a metallic projectile by means of spring, gas, or air, and therefore met the definition of a deadly weapon. *See* NRS 193.165(6)(c) (a deadly weapon includes the weapons identified in NRS 202.265); NRS 202.265(5)(b) (listing a firearm as a weapon, and defining firearm as "any device from which a metallic projectile, including any ball bearing or pellet, may be expelled by means of spring, gas, air or other force"). Kelly's former counsel testified that, at first, he did not believe the gun constituted a deadly weapon, but after researching its capabilities online, talking to the prosecutor, and reading the relevant caselaw, he concluded otherwise.
>
> Based upon the testimony presented at the evidentiary hearing, the district court concluded that the airsoft gun constituted a deadly weapon for the purposes of NRS 193.165(6). However, the district court concluded that counsel was deficient because he did not adequately investigate the gun's capabilities before advising Kelly to plead guilty. The district court also

concluded that Kelly was prejudiced because "he received consecutive sentences that he otherwise would not have received if the investigation had determined that the airsoft gun did not meet statutory requirements."

We conclude that the district court erred. Even assuming that counsel was deficient and should have undertaken additional investigation before advising Kelly to plead guilty, Kelly failed to demonstrate that further investigation would have revealed information that would have caused him to reject the plea. *See Molina v. State*, [87 P.3d 533, 538 (Nev. 2004)]. In fact, the record demonstrates that any further investigation would only have confirmed that the gun constituted a deadly weapon, as the district court itself concluded. The district court applied an incorrect test for prejudice because the relevant inquiry was not whether counsel's deficiency could have altered the possible sentence. Rather, the appropriate test was whether, absent counsel's deficiency, there was a reasonable probability that Kelly would have rejected the plea and proceeded to trial. *See Hill*, 474 U.S. at 58-59. Because Kelly pleaded guilty based upon counsel's advice that the airsoft gun constituted a deadly weapon, and additional investigation would have confirmed that the gun constituted a deadly weapon, Kelly failed to demonstrate that he would have rejected the plea. We concluded that the district court erred by concluding that Kelly demonstrated prejudice. And to the extent that the district court's order can be read to conclude that counsel's performance resulted in an unknowing plea, we conclude that the district court abused its discretion. *See Rubio v. State*, [194 P.3d 1224, 1228 (Nev. 2008)] ("A guilty plea is knowing and voluntary if the defendant has a full understanding of both the nature of the charges and the direct consequences arising from a plea of guilty." (internal quotation marks and emphasis omitted)).

(Exh. 77 (ECF No. 12-11) at 2-4.) The Nevada Supreme Court's conclusion that Petitioner had not demonstrated ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts.

At the evidentiary hearing, Petitioner's trial attorney testified that he conducted some research into whether an airsoft gun was a deadly weapon. He testified that although he believed an argument could be made that it was not, the D.A. advised him that it had an expert who would testify that a metal projectile could be shot from an airsoft gun—bringing it within the statutory definition of a deadly weapon—and that the plea deal would be off if Petitioner sought to dismiss the deadly weapon enhancement. (Exh. 57 (ECF No. 11-11) at 32-38.) The State's expert testified that the airsoft gun was capable of expelling a metal projectile, and that metallic pellets were in fact available to purchase for the gun. (*Id.* at 12.)

9

At the end of the day, the trial court found that the airsoft gun "readily meets the definition of a deadly weapon under NRS 193.165(6)(a)." (Exh. 58 (ECF No. 11-12) at 4-5.) In light of this finding, Petitioner cannot and has not shown that further investigation would have resulted in either his rejection of the plea offer or a different result at sentencing. The Nevada Supreme Court's rejection of this claim was not therefore objectively unreasonable.

To the extent Petitioner argues that the trial court's finding that the airsoft gun is a deadly weapon was objectively unreasonable (*see* ECF No. 6 at 9), the claim is without merit. *See Cedeno v. Filson*, No. 3:17-cv-00036-LRH-VPC, 2018 WL 2023125, at *2 (D. Nev. Apr. 30, 2018) (finding an airsoft gun is a deadly weapon); *Goode v. State*, No. 72031, 2018 WL 1036895, at *2 n.1 (Nev. App. Feb. 13, 2018) (same).

Petitioner is not entitled to relief on Ground 2.

## V.    CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, the petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-51 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The Court has considered the issues raised by Petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that ///

none meet that standard. Accordingly, Petitioner will be denied a certificate of appealability.

**VI.    CONCLUSION**

It is therefore ordered that the petition for writ of habeas corpus in this case (ECF No. 6) is denied, and this action is dismissed with prejudice.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of Court is instructed to enter judgment and close this case.

DATED THIS 19th day of March 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE